Delores E. COLLINS and William J. Collins, Sr., Plaintiffs,

v.

BAXTER HEALTHCARE CORP., et al., Defendants.

Kathleen M. ZARNOSKY and John D. Zarnosky, Plaintiffs,

v.

BAXTER HEALTHCARE CORP., et al., Defendants.

Renee HARKINS, Plaintiff,

v.

BAXTER HEALTHCARE CORP., et al., Defendants.

Civil Action Nos. 95–5558 to 95–5560.

United States District Court, D. New Jersey.

April 23, 1996.

---

8. True enough, but this case involves a claim of fraud, not negligence.

John M. Di Donato, Brookman Rosenberg Brown and Sandler, Haddonfield, NJ, David C. Weinberg, Goldfein & Joseph, P.C., Princeton, NJ, for Plaintiffs.

Angela D. Slater, Hannoch Weisman, Roseland, NJ, for Baxter International Inc.

Alissa Pyrich, Reed Smith Shaw & McClay, Princeton, NJ, for Sherwood Medical Company.

Edward F. Curtin, Marks, O'Neill, Reilly, O'Brien, Westmont, NJ, for Tillotson Healthcare Services.

Patricia Awrong Smith, Pepper, Hamilton & Scheetz, Cherry Hill, NJ, John L. Slimm, Marshall, Dennehey, Warner, Coleman and Goggin, Marlton, NJ, for Jason Marketing Corporation.

## ORDER

RODRIGUEZ, District Judge.

This matter is before the court on plaintiffs' motions to remand their actions to state court, where the cases were originally filed. For the reasons expressed below, the court will grant plaintiffs' motions. Further, on its own motion, and for the purpose of resolving these motions to remand, the court will consolidate the three cases under one civil action.

## I. *BACKGROUND*

Plaintiffs in these actions are nurses and their spouses seeking relief for their damages allegedly sustained through daily contact with latex products manufactured by the defendants and used by the nurses in their work. Plaintiffs each allege that they were exposed over a period of years to latex, latex dust, latex containing powder, and "various

powder additives emitted from the various latex containing products" such as latex gloves, foley catheter kits, blood pressure cuffs and soap dispensers. Plaintiffs state that this exposure caused injuries including but not limited to "asthma, rhinitis, respiratory problems, hives, contact dermatitis, throat soreness, facial swelling, drooling, hoarseness, extreme discomfort, depression and emotional distress." Plaintiffs allege damages for medical expenses and loss of earnings and earning capacity as a result of exposure to these products. Plaintiffs assert claims for relief under state law including negligence, strict liability, breach of warranty, both implied and express, fraudulent concealment, loss of consortium, and seek punitive damages.

Plaintiffs' complaints were initially filed in the Superior Court of New Jersey, Camden County, on September 19, 1995, and were removed to this court by the defendants on October 27, 1995. The defendants' notice of removal asserted that this court has federal question jurisdiction over the actions because the actions are completely preempted by the Medical Devices Amendments of 1976, which amended the Food, Drug and Cosmetic Act of 1938, 21 U.S.C. 360–360rr ("MDA").

In the instant motion, plaintiffs contend that the removal was improper for two reasons: 1) not all defendants signed the notice of removal or filed certifications joining in the removal at that time, and 2) the actions are not completely preempted by federal law.

■ With regard to plaintiffs' assertions that the removal was defective for failure of the defendants to affirmatively join in the removal, we note that defendant Baxter's notice of removal named counsel for each of the other defendants. The notice asserted that all of the defendants had given their "express authorization" to "represent herein" their "consent[ing] to and join[ing] in the removal of this action," and that each had been "served with the Summons and Complaint." Only counsel for Baxter signed the notice of removal, however, because "consent" was obtained by telephone in order to "effectuate the timely removal of this action."

Plaintiffs contend that this alleged consent is insufficient to meet the requirements of

the rule. Plaintiffs note that in *Creekmore v. Food Lion, Inc.,* 797 F.Supp. 505 (E.D.Va. 1992), the judge ruled that each defendant must file a notice of removal or unambiguously join in or consent to another defendant's notice. The judge rejected the argument that removal was proper where the defendant had attested to the consent of the other defendants in the notice. However, in that case the court emphasized that even after the motion to remand was filed, defendants had failed to advise the court of their consent to removal, failed to appear at the hearing on the motion to remand, and failed to join a motion for reconsideration of the court's decision to remand the case to state court. *Id.* at 509, n. 8.

■ Here, each defendant has filed a certification with the court asserting that it affirmatively consented to the notice of removal, and each has joined the opposition to the plaintiffs' motions to remand. As such, even if the bare assertions of consent were less than adequate, defendants' late assurances that they did, in fact, consent to be joined in the removal will be accepted by the court. In the future, however, the court cautions that formal expressions of consent, in the form of certifications or joining in the notice of removal by signing the notice, will be required within the time provided for under 28 U.S.C. § 1446. Because we find that defendants met the procedural requirements for removal, the court will focus on plaintiffs' argument that the removal was improper because the federal statute has not completely preempted plaintiffs' claims.

## II. ANALYSIS

28 U.S.C. § 1441 governs removal of civil actions from state to federal courts. § 1441(a) requires, as a condition of removal, that the federal court have original jurisdiction over the action. In this case, defendants do not argue that complete diversity exists between the parties. Instead, defendants contend that this court has federal question jurisdiction over the action.

A. *Whether there was a federal question presented on the face of plaintiffs' complaints.*

■ 28 U.S.C. § 1331 provides for federal question jurisdiction where a civil action

"arise[s] under the ... laws ... of the United States." 28 U.S.C. § 1331. Further, " '[i]n order for a case to be removable under § 1441 and § 1331, the well-pleaded complaint rule requires that the federal question be properly presented on the face of the plaintiff's properly pleaded complaint.' " *Krashna v. Oliver Realty, Inc.,* 895 F.2d 111, 113 (3d Cir.1990) (quoting *Railway Labor Executives Ass'n v. Pittsburgh & L.E.R.R.,* 858 F.2d 936, 939 (3d Cir.1988)).

■ Here, plaintiffs' "well-pleaded complaint" does not state a claim based on federal law. However, plaintiffs' negligence claims assert nineteen different ways in which defendants breached their duty of care to the plaintiffs. (See, for example, Zarnosky complaint, p. 5–9, paras. a. to s.). One of these nineteen statements of breach of care includes "fail[ure] to comply with applicable governmental regulations and/or statutes and/or recognized industry standards pertaining to the manufacture, design, assembly and fabrication of said latex-containing products). (Zarnosky complaint, p. 9, para. n.). Defendants do not contend that this paragraph asserts a federal claim. Although defendants refer to this paragraph of the complaints, they do so asserting that the paragraph "demonstrates that the federal causes of action provided under the FDCA 'seek to vindicate the same interests' as the plaintiffs' purported state law claims," thereby supporting their argument that the Third Circuit test for "complete preemption" is met. (Defendants' brief, p. 21). However, even if the defendants had argued that paragraph "n" of the complaint meets the requirement that the complaint raise a federal question on its face, we would not agree. Plaintiff does not seek relief under the MDA, but instead seeks to use the federal requirements as evidence of a standard of care, in the same manner as "industry standards" are used. The fact that the complaint alludes generally to "applicable governmental regulations and/or statutes" does not raise a federal question on its face. *See*

*Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 310 (3d Cir.1994) (complaint stating that it was seeking to enforce contract made pursuant to Federal Health Benefits Employees Act, despite possibility that state claims might be ultimately preempted, did not raise a federal question on its face "merely by virtue of the fact that it alludes to a federal contract"), *cert. denied,* —— U.S. ——, 115 S.Ct. 1691, 131 L.Ed.2d 555 (1995). Further, even if plaintiffs wanted to pursue relief under the MDA, defendants concede that the federal statute does not provide a cause of action for private litigants.[1] (Defendants' brief, p. 21).

■ However, as the court explained in *Krashna,* 895 F.2d at 113, even though plaintiffs' complaint does not assert a claim for relief under federal law, the "complete preemption" exception to the well-pleaded complaint rule will permit removal on the basis of federal question jurisdiction where a statute's preemptive force is "so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987)). The *Krashna* court further explained:

"The complete preemption doctrine holds that 'Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character.' " *Railway Labor,* 858 F.2d at 939 (quoting *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. at 1547). For the proposes of removal, "[o]nce an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Cat-*

---

1. However, at least one court has found that a state claim asserting negligence for failure to meet the federal requirements is not preempted by the MDA, because the plaintiffs would not be requiring defendants to comply with regulations or "requirements" which are "different from or an addition to, any requirement applicable" under the MDA. *See Ministry of Health, Province of Ontario, Canada v. Shiley Inc.,* 858 F.Supp. 1426, 1439 (C.D.Cal.1994); 21 U.S.C. § 360(k).

*erpillar,* 482 U.S. at 393, 107 S.Ct. at 2430; *see Railway Labor,* 858 F.2d at 939. *Krashna,* 895 F.2d at 113–14.

### B. *Distinction Between Complete Preemption and Ordinary Preemption.*

■ It is important to note that the "complete preemption" doctrine is different from the preemption of a state claim for summary judgment purposes, which we will call "ordinary" preemption for the purpose of clarity. "Complete" preemption and "ordinary" preemption differ both in the analysis required to find preemption and in the result. The fact that defendants will assert a federal defense of "ordinary" preemption of a claim is not sufficient to support removal of the action from state court. *Id.* As the court explained in *Goepel,* " '[i]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.' " 36 F.3d at 311 n. 6 (quoting *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430).

Further, "ordinary" preemption of a state claim is not dispositive in determining whether the federal statute meets the requirements for the complete preemption exception to the well-pleaded complaint rule. In *Krashna,* despite the Supreme Court's holding that the LMRA completely preempts state claims, the Third Circuit Court of Appeals remanded a complaint asserting claims of intentional infliction of emotional distress, tortious interference with a contract, and wrongful discharge and interference with a statutory right to benefits under the state worker's compensation law. There, the court found that these claims were outside the scope of the parties' collective bargaining agreement and § 301 of the LMRA. Further, although finding that the claims were not removable on the basis of complete preemption, the court noted that it "need not consider the viability of [the wrongful discharge state law] claim *nor whether ordinary pre-*

*emption operates against it.* These are matters for the state court." *Id.* at 115 n. 7 (emphasis added). As such, mere ordinary preemption of plaintiff's claims was not dispositive on the issue of improper removal.

The Third Circuit Court of Appeals has not yet determined whether the federal statute at issue in the instant matter is of such "extraordinary" force as to "completely" preempt the field.[2] Instead, in the context of challenges to summary judgment rulings, the Third Circuit has held that ordinary preemption exists under the MDA for causes of action based on negligence, strict liability, and implied breach of warranty. *English v. Mentor Corp.,* 67 F.3d 477 (3d Cir.1995); *Gile v. Optical Radiation Corp.,* 22 F.3d 540, *cert. denied,* — U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *Michael v. Shiley, Inc.,* 46 F.3d 1316 (3d Cir.1995). The preemption of these state claims is premised on the language of the MDA in § 360k, which states:

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k. The Third Circuit holds that state common law constitutes a "requirement" "different from, or in addition to" the federal requirements. *Michael,* 46 F.3d at 1323. However, the Third Circuit has also held that the MDA does not preempt claims based upon breach of express warranty, advertising fraud, and loss of consortium grounded in a breach of warranty claim. *English,* 67 F.3d at 481; *Michael,* 46 F.3d at 1331.

Our search has revealed only one Circuit Court of Appeals which has ruled on whether

---

**2.** The United States Supreme Court has found only two federal statutes which "completely" preempt state common law causes of action. These are the Labor Management Relations Act (LMRA) and the Employee Retirement Income Security Act (ERISA). *Goepel,* 36 F.3d at 311.

the MDA "completely" preempts state law causes of action for the purpose of determining federal jurisdiction. Although the Circuit Court of Appeals for the Sixth Circuit had previously held that several state common law claims were preempted for summary judgment purposes, on March 15, 1996, the court ruled that the MDA does not meet the requirements for "complete" preemption. In *Strong v. Telectronics Pacing Systems, Inc.*, 78 F.3d 256 (6th Cir.1996), the court found that the MDA "expressly preempts certain state requirements, but does not create a parallel federal cause of action" and therefore cannot convert the state law claim into a federal cause of action for the purposes of the complete preemption exception to the well-pleaded complaint rule. The Sixth Circuit rejected defendants' argument that the MDA not only preempts state law, but also provides federal remedies, and held that the "federal administrative remedies under the MDA are insufficient to evince the clear manifestation of congressional intent necessary to create removal jurisdiction." *Id.* Here, again, the court emphasized that removal and ordinary preemption are different and distinct concepts, "and the fact that plaintiffs' claims might ultimately prove to be preempted does not establish that it is removable to federal court." *Id.* The court also recognized that the state court was competent to determine whether plaintiff's claims were preempted, with regard to the defendant's federal defense. *Id.; see also Goepel,* 36 F.3d at 316 (emphasizing that rejection of complete preemption argument for removal purposes did not prejudice merits of defendant's preemption claim in state court, and noting that state courts are competent to determine such ordinary preemption questions).

## C. The Complete Preemption Doctrine

■ In the Third Circuit, there is a two-pronged test for determining whether a federal statute meets the requirements of the complete preemption doctrine. *Krashna,* 895 F.2d at 114; *Goepel,* 36 F.3d at 311. First, the statute must contain "civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Railway Labor,* 858 F.2d at 942. Second, the court must find

a "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Railway Labor,* 858 F.2d at 942. Both factors must be present for the court to find that the federal statute meets the requirements of the "complete" preemption exception to the well-pleaded complaint rule. *Goepel,* 36 F.3d at 311.

1. *Whether the MDA contains civil enforcement provisions within the scope of which the plaintiffs' state claim falls.*

■ As noted, the Sixth Circuit Court of Appeals recently held that Congress' failure to create in the MDA a "parallel federal cause of action that would 'convert' a state cause of action into the federal action for purposes of the well-pleaded complaint rule" precluded a finding of complete preemption and required that the district court remand the action to state court. *Strong,* 78 F.3d at 260. We note that, in addition to the Sixth Circuit, the District Court for the Northern District of Illinois has consistently held that the MDA does not meet the requirements for complete preemption. *McQuerry v. Am. Medical Sys.,* 899 F.Supp. 366 (N.D.Ill.1995); *Goldstein v. W.L. Gore & Assoc., Inc.,* 887 F.Supp. 168 (N.D.Ill.1995); *Green v. Telectronics Pacing Systems, Inc.,* 1995 WL 215045 (N.D.Ill., April 10, 1995). This is despite the Seventh Circuit's holding that state tort claims are preempted by the MDA. *Mitchell v. Collagen Corp.,* 67 F.3d 1268, 1276 (7th Cir.1995). Although no other circuit court of appeals has ruled on the issue, defendants point to several district courts, including Texas, Tennessee, Louisiana, Massachusetts, Colorado, and Missouri, who have found complete preemption by the MDA. With the exception of one Louisiana case, however, none of these are published opinions. Further, although the Louisiana case, *Richardson v. Advanced Cardiovascular Systems,* 865 F.Supp. 1210 (E.D.La.1994), found that the MDA met the requirements for complete preemption, it is notable that an unpublished opinion by a court in the same district held that the MDA did not meet the requirements for complete preemption.

*Geissert v. Republic Ins. Co.,* No. 95–897, 1995 WL 328174 (E.D.La., May 31, 1995). Notably, *Richardson* did not decide the issue of whether the MDA provided a parallel federal cause of action because "the Fifth Circuit held that the key in determining whether removal is appropriate under the complete preemption doctrine is the intent of Congress and not whether Congress provided a substitute federal remedy." *Richardson,* 865 F.Supp. at 1213. *Geissert,* on the other hand, found no Congressional intent to permit removal, and therefore no federal jurisdiction.

Despite defendants' contentions to the contrary, in the Third Circuit it is clear that both prongs of the complete preemption test must be met. *Goepel,* 36 F.3d at 311. As such, defendants next claim that the first prong of the test is met, because the "FDCA explicitly provides the FDA with a wide range of civil enforcement powers," including detaining or seizing misbranded devices, enjoining violations of regulations, assessing fines, mandating recalls, and requiring manufacturers to notify doctors of problems with a product. (Defendants' brief, p. 20–21). Although admitting that no private cause of action exists under the MDA or FDCA for litigants, defendants contend that "this absence of private rights of action only reinforces the conclusion that Congress did not intend for state courts to construe the MDA's complex regulatory scheme." (Id. at 21). Defendants further argue that, instead of creating a federal cause of action, the test is met by the fact that plaintiffs' interest in the safety of the product is vindicated by the MDA's requirements. In support, defendants cite the Supreme Court's footnote in *Caterpillar,* 482 U.S. at 391 n. 4, 107 S.Ct. at 2429 n. 4, contending that the Court foreclosed any analysis of whether a parallel cause of action was created by Congress in the MDA. However, the meaning of the Supreme Court's footnote in *Caterpillar* is not entirely clear. There, in *dicta,* the Supreme Court noted:

> The Court of Appeals appeared to have held "that a case may not be removed to federal court on the ground that it is completely preempted unless the federal cause of action relied upon provides the plaintiff

with a remedy." For example, the court stated:

> "[A] state law cause of action has been 'completely pre-empted' when federal law both displaces and supplements the state law—that is, when federal law provides both a superseding remedy replacing the state cause of action *and* preempts that state law cause of action. These are two distinct inquiries, both of which must be satisfied to permit removal of an action to federal court." 786 F.2d, [928] at 932 (emphasis in original; citations omitted).

This analysis is squarely contradicted by our decision in *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). We there held that a § 301 claim was properly removed to federal court although, at the time, the relief sought by the plaintiff could only be obtained in state court. We reasoned as follows:

> "The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy.... [T]he breadth or narrowness of the relief which may be granted under federal law in § 301 cases is a distinct question from whether the court has jurisdiction over the parties and the subject matter." *Id.,* at 561 [88 S.Ct. at 1237–38].

Thus, although we affirm the Court of Appeals' judgment, we reject its reasoning insofar as it is inconsistent with *Avco. See also Franchise Tax Bd. of Cal v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 23 [103 S.Ct. 2841, 2853, 77 L.Ed.2d 420] (1983) ("The Court of Appeals held [in *Avco*], and we affirmed, ... that the petitioner's action 'arose under' § 301, and thus could be removed to federal court, although the petitioner had undoubtedly pleaded an adequate claim for relief under the state law of contracts and had sought a remedy available *only* under state law") (emphasis in original; citation omitted).

*Caterpillar,* 482 U.S. at 391 n. 4, 107 S.Ct. at 2429 n. 4. Extremely important to an understanding of this footnote is the fact that the issue in *Avco* was the plaintiff's state court

claim seeking to enjoin a union from striking at plaintiff's plant. *Avco,* 390 U.S. at 558, 88 S.Ct. at 1236. After the Tennessee state court issued an injunction, the defendants removed to federal court and the district court judge dissolved the injunction. Justice Douglas, delivering the opinion of the court, acknowledged the federal question jurisdiction over § 301 actions. However, the language noted by the Supreme Court in *Caterpillar,* that the "nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction," is then followed by the *Avco* Court's statement:

> The relief in § 301 cases varies—from specific performance of the promise to arbitrate (citation omitted), to enforcement or annulment of an arbitration award (citation omitted), to an award of compensatory damages (citation omitted), and the like. [citation omitted]. But the breadth or narrowness of the relief which may be granted under federal law in § 301 cases is a distinct question from whether the court has jurisdiction.... Any error in granting or designing *relief* 'does not go to the jurisdiction of the court.' [citation omitted]. When the Court in *Sinclair Refining Co. v. Atkinson,* [370 U.S. 195, 215, 82 S.Ct. 1328, 1339, 8 L.Ed.2d 440 (date) ], said that dismissal of a count in the complaint asking for an injunction was correct 'for lack of jurisdiction under the Norris–LaGuardia Act,' it meant only that the Federal District Court lacked the general equity power to grant the particular relief.

*Avco,* 390 U.S. at 561, 88 S.Ct. at 1238. Of particular note is that § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, at issue in both *Avco* and in *Caterpillar,* provides private litigants with a cause of action. As such, it is clear that the Supreme Court is not addressing a situation in which a statute provides *no* cause of action for a private litigant, but rather is addressing the problem of different relief permitted under the state as compared to the federal law. This distinction is further illustrated by the Third Circuit's opinion in *Railway Labor.* There, in a footnote also relied upon by the defendants, the court stated that "[t]he issue is not whether the federal law provides the

*same remedy* available to the plaintiff under state law, but rather whether there is some vindication for the same interest. *See Avco,* 390 U.S. at 561, 88 S.Ct. at 1237; *Caterpillar,* [482 U.S. at 391, n. 4] 107 S.Ct. at 2429, n. 4." *Railway Labor,* 858 F.2d at 942 n. 2.

In the case before us, plaintiffs have no right to seek relief of any kind under the federal law. Nor, as defendants concede, can plaintiffs attempt to compel the FDA to impose its "wide range of civil enforcement powers." (Defendants' brief, p. 21). Moreover, with only one exception, no Circuit Court of Appeals has held that the complete preemption requirements were met by any federal statute which did not provide a private cause of action for litigants affording them relief in some form. *See M. Nahas & Co. v. First Nat'l Bank,* 930 F.2d 608, 612 (8th Cir.1991) (National Bank Act); *Rosciszewski v. Arete Assoc.,* 1 F.3d 225, 232–33 (4th Cir.1993) (Copyright Act). The exception to this rule occurred in *Trans World Airlines v. Mattox,* 897 F.2d 773, 787 (5th Cir.), *cert. denied,* 498 U.S. 926, 111 S.Ct. 307, 308, 112 L.Ed.2d 261 (1990), in which the Fifth Circuit Court of Appeals held that the Airline Deregulation Act met the requirements for complete preemption and barred the state Attorney General's suit seeking to enforce state deceptive advertising practices against the airline. The Airline Deregulation Act does not provide a private litigant with a federal cause of action. There, in two paragraphs, the Fifth Circuit explained that Congress' "express preemption" of the state claim, discussed earlier in the opinion, also supported a finding of complete preemption for the purposes of federal jurisdiction. The court did not address the two pronged test required in the Third Circuit.

As noted, like the LMRA, ERISA provides private litigants with a federal cause of action, and was found by the Supreme Court to completely preempt state law. *Goepel,* 36 F.3d at 311. The private cause of action permitted under ERISA was used by the Third Circuit Court of Appeals to distinguish it from the Federal Employees Health Benefits Act (FEHBA) in *Goepel.* There, the Third Circuit Court of Appeals reversed the District Court of New Jersey's holding that

FEHBA, like ERISA, completely preempted state law for the purposes of federal jurisdiction. In analyzing FEHBA for complete preemption, the court noted the two-part test, and the fact that "[i]n some respects [the FEHBA preemption provision] does resemble ERISA's preemption provision." *Goepel,* 36 F.3d at 312. However, the court distinguished the provisions, noting, [h]owever, [that] ERISA contains a civil enforcement provision expressly authorizing ERISA beneficiaries to brings actions to recover benefits under an ERISA plan. *See* 29 U.S.C. § 1132(a). In contrast, "FEHBA does not create a cause of action vindicating a beneficiary's interest." *Id.*

Further, the United States Supreme Court in *Franchise Tax Board v. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), found that ERISA did not completely preempt a state taxing authority's suit to enforce levies against funds held in trust pursuant to an ERISA-covered plan. *Id.* at 28, 103 S.Ct. at 2856. The Court noted that under § 502(a) of ERISA, certain persons "participants, beneficiaries, fiduciaries, or the Secretary of Labor" could "bring actions for particular kinds of relief." *Id.* at 25, 103 S.Ct. at 2854. Although the Court noted that the "State's right to enforce its tax levies is not of central concern to the federal statute," the Court also noted that the Circuit Court of Appeals "may well be correct that ERISA precludes enforcement of the State's levy in the circumstances of this case." However, the Court found that "an action to enforce the levy is not itself pre-empted by ERISA." Notably, the court came to this conclusion, in part, because "ERISA does not provide an alternative cause of action in favor of the State to enforce its rights, while § 301 [of the LMRA] expressly supplied the plaintiff in *Avco* with a federal cause of action to replace its preempted state contract claim." *Id.* at 26, 103 S.Ct. at 2855.

Similarly, in *Railway Labor,* the Third Circuit declined to find complete preemption by the Interstate Commerce Act where the court found that the act "contain[ed] no civil enforcement provisions creating a federal cause of action in favor of one in the position of the [plaintiff] or the employee creditors." *Railway Labor,* 858 F.2d at 942; *Cf. Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) (where complaint alleged violation of Federal Food, Drug, and Cosmetic Act (FDCA) as an element of a state cause of action, Court found no claim arising under federal law where statute provided no private federal cause of action for the violation).

We also note plaintiffs' argument that the devices at issue in this action are classified under Class I of the MDA. Although defendants argue that the corn starch powder contained in some of the latex gloves is classified under Class III, we note that the complaints primarily allege harm from latex and latex dust. We further note that Class I devices are considered by the FDA as posing little threat to the public and, therefore, are "subject to only general requirements concerned with their manufacture." *Kennedy v. Collagen Corp.,* 67 F.3d 1453, 1455 (9th Cir. 1995); *see also Martello v. Ciba Vision Corp.,* 42 F.3d 1167, 1168 (8th Cir.1994) (Class I devices "are the most loosely regulated and are subjected only to general controls"), *cert. denied,* —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995).[3]

Although defendants may be correct that the "interests" plaintiffs assert concerning safety of the medical device are addressed by the MDA, we will not find federal jurisdiction over plaintiffs' state claims where the federal statute provides no cause of action whatsoever to the plaintiffs, and the devices at issue are subject to minimal regulations by the federal law.

---

**3.** Notably, the Third Circuit Court of Appeals has not yet considered whether actions concerning Class I medical devices are subject to even ordinary preemption. To date, all Third Circuit opinions have concerned Class III devices, which are the most heavily regulated. This court has been unable to find decisions by any Circuit Court of Appeals holding that Class I devices are subject to ordinary preemption. However, it is not for this court to determine whether Class I devices will be treated differently from Class III devices for ordinary preemption purposes. That decision will be for the state court on remand. *Goepel,* 36 F.3d at 315–16.

2. *Whether Congress clearly indicated an intention to permit removal despite plaintiff's exclusive reliance on state law.*

Even assuming that the MDA had passed the first prong of the test, defendants must also demonstrate "a clear indication of a Congressional intention to permit removal despite the plaintiff's reliance on state law." *Railway Labor*, 858 F.2d at 942; *see also Metropolitan Life*, 481 U.S. at 68, 107 S.Ct. at 1548; *Goepel*, 36 F.3d at 311. If there is no affirmative indication of Congressional intent to permit removal, "the district court need not and should not address the issue of whether the state substantive law relied upon by the plaintiff has been preempted by federal law. That issue must be left for determination by the state court on remand." *Id.* As such, defendants' argument that Congress vested the FDA with the authority to regulate devices for the safety of the public and to encourage research, is not dispositive. (Defendants' brief, p. 11). Defendants also claim that "[t]he second prong of the Third Circuit's standard test for complete preemption—Congressional intent to permit removal of plaintiffs' claims—is inherently inapplicable in this context." (Defendants' brief, p. 22). Although defendants contend that Congress failed to expressly permit removal because it intended that there be no private right of action under the statute, we are not persuaded by this circular argument. Defendants do not argue, and we do not find, that § 360k evinces an intent by Congress regarding removal. As such, the second part of the test is not met.

In *Abels v. State Farm Fire & Cas. Company*, the Third Circuit Court of Appeals cautioned that "[b]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly. construed and all doubts should be resolved in favor of remand. [citations omitted]." 770 F.2d 26, 29 (3d Cir.1985). The court also advised that "it is the defendant's burden to show the existence of federal jurisdiction." *Id.* Because we find that defendants have not met their burden of proving federal jurisdiction, we will grant plaintiff's motion to remand to state court. For these reasons, it is

On this 19th day of April, 1996,

ORDERED that the civil complaints of *Collins v. Baxter Healthcare Corp.*, Civil Action No. 95–5558; *Zarnosky v. Baxter Healthcare Corp.*, Civil Action No. 95–5559; and *Harkins v. Baxter Healthcare Corp.*, Civil Action No. 95–5560 be *CONSOLIDATED* for all purposes under one civil action under the *LEAD CASE* of *Collins v. Baxter Healthcare Corp.*, Civil Action No. 95–5558; it is further

ORDERED that plaintiff's motion to remand to the Superior Court of New Jersey is *GRANTED.*