**CITY OF GARY, INDIANA,**
**by its Mayor, Scott L.**
**KING, Plaintiff,**

v.

**SMITH & WESSON CORP.,**
**et al., Defendants.**

No. 2:99CV441.

United States District Court,
N.D. Indiana,
Hammond Division.

April 17, 2000.

James B Meyer, W Anthony Walker, Lukas I Cohen, Meyer & Godshalk PC, Gary, IN, Dennis A Henigan, Brian J Siebel, Jonathan E Lowy, The Center to Prevent Handgun, Violence, Legal Action Project, Washington, DC, for City of Gary, Ind., by its Mayor, Scott L. King, plaintiffs.

Terence M Austgen, Elizabeth M Bezak, Singleton Crist Austgen and Sears, Munster, IN, Anne Kimball, Unknown, James Dorr, Wildman Harrold Allen and Dixon, Chicago, IL, for Smith & Wesson Corp., Sturm Ruger & Co. Corp., defendants.

David C Jensen, John M McCrum, Eichhorn & Eichhorn, Hammond, IN, Lawrence S Greenwald, Gordon Feinblatt Rothman, Hoffberger and Hollander, Baltimore, MD, for Beretta USA Corp., defendant.

Richard A Mayer, Spangler Jennings and Dougherty, P C, Merrillville, IN, for Browning Arms Corp., Sigarms Corp., defendant.

Richard A. Mayer, Spangler Jennings and Dougherty, Merrillville, IN, John F Renzulli, John J McCarthy, III, Nancy Tunis, Renzulli and Rutherford, New York City for Glock Corp., defendant.

John F Renzulli, John J McCarthy, III, Nancy Tunis, Renzulli and Rutherford, New York, NY, for Hi–Point Firearms Corp., Kel–Tec CNC Corp., defendants.

John J Bullaro, Jr, Bullaro Carton and Stone, Munster, IN, for Navegar Inc., defendant.

John W Mead, Mead Mead & Clark PC, Salem, IN, Stacia L Yoon, Kopko Genetos and Retson, Merrillville, IN, for B.L. Jennings, Inc., Bryco Arms Corp., defendant.

Renee J Mortimer, Hinshaw and Culbertson, Munster, IN, for Taurus Firearms Corp., defendant.

Jon F Schmoll, Gregory J Tonner, Spangler Jennings and Dougherty P.C., Merrillville, IN, for American Shooting Sports Council, Inc, National Shooting Sprots Foundation, Inc., Sporting Arms & Ammunition, defendants.

Paul R Chael, Merrillville, IN, for Ameri–Pawn of Lake Station, Inc., defendant.

Kenneth D Reed, Abrahamson Reed and Adley, Hammond, IN, for Blythes Sport Shop, Inc., defendant.

John E Hughes, Hoeppner Wagner and Evans, Valparaiso, IN, for Cash Indiana, IN, defendant.

Barry D Sherman, Sherman and Allegretti, Hammond, IN, Kristen D Hill, Hammond, IN, for Jim Shema's Outdoor Sports, defendants.

Frederick J Ball, Goodman Ball Van-Bokkelen, Leonard and Kline, Highland, IN, Ihor Alexander Woloshansky, Barrister Court, Merrillville, IN, for Westforth Sports, Inc., defendant.

## ORDER

MOODY, District Judge.

This case is one of a number of substantially similar actions filed by municipalities across the country seeking to hold the defendants, whose identities vary from case to case, but are firearms manufacturers and local retail outlets, liable under state tort law for negligently marketing and distributing firearms. Plaintiff City of Gary's ("Gary") complaint pleads three counts explicitly based solely on state law: public nuisance, negligent distribution and marketing, and negligent design. The defendants removed the case to this court pursuant to 28 U.S.C. § 1441(b), purporting that Gary's claims are federal in nature because completely preempted by the Commerce, Import/Export, and Due Process Clauses of the United States Constitution. U.S. Const. art. I, § 8, cl. 3; art. I, § 10, cl. 2; amend. XIV, § 1. Before the court is Gary's motion to remand the action to state court pursuant to 28 U.S.C. § 1447(c).[1]

In a nutshell, the respective positions of the parties are as follows. Gary argues that because it has confined its complaint solely to state law theories, the "well-pleaded complaint rule" dictates that the case is not one that could have originally been brought in federal court and so it is not removable. *See* 28 U.S.C. § 1441(a); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Taylor v. Anderson*, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218 (1914). The defendants argue that Gary has used "artful pleading" in framing its complaint, but that Gary's claims implicate the interstate distribution of handguns—an area completely preempted by federal law, in defendants' view—making the case removable under the "complete pre-emption corollary to the well-pleaded complaint rule." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430; *see also Rivet v. Re-*

1. Gary's December 3, 1999, motion for leave to submit supplemental authority is **GRANTED.**

*gions Bank of Louisiana,* 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). Gary's response is that defendants have not established that Congress intended to completely preempt state regulation of interstate commerce in firearms, and, in any event, this is a case where preemption is a defense only, not a basis for removal. *Cf. Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) ("[f]ederal pre-emption is ordinarily a federal defense .... As a defense, it ... does not authorize removal"); *see also Rivet,* 522 U.S. at —, 118 S.Ct. at 925 (1998); *Franchise Tax Bd. of the State of Cal. v. Construction Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

This same debate has occurred in each of the other cases pending nationwide, and the result, as defendants admit but continue to disagree with, has uniformly been remand to state court. *See, e.g., City of Camden v. Beretta U.S.A. Corp.,* 81 F.Supp.2d 541 (D.N.J.2000); *Archer v. Arms Technology, Inc.,* 72 F.Supp.2d 784 (E.D.Mich.1999); *McNamara v. Arms Technology, Inc.,* 71 F.Supp.2d 720 (E.D.Mich.1999); *Penelas v. Arms Technology, Inc.,* 71 F.Supp.2d 1251 (S.D.Fla. 1999); *City of Boston v. Smith & Wesson Corp.,* 66 F.Supp.2d 246 (D.Mass.1999). This court has read each of the cited cases, and because it agrees with both the analysis and the result reached in those cases, there is no need to belabor the issues here. Instead, the court will explain its holding as briefly as is possible, without reiterating at length what has been said elsewhere.

■ The defendants' primary argument is that regardless whether Congress has passed preemptive legislation, the Constitution itself, via the Commerce Clause,[2] completely preempts any state law that would impact on the interstate movement of firearms.[3] The argument can best be summarized with excerpts from defendants' brief:

If the Commerce Clause gives Congress the power to regulate interstate commerce, and thus confers the power to preempt state regulation through federal statutory law, then it follows that the Commerce Clause itself can completely preempt state regulation—namely, regulation that reaches out beyond the state's borders to control commercial conduct lawful in other states and signifies an intent to impose social policy on the entire nation.

. . . . .

[F]ederally licensed firearms manufacturers engaging in lawful interstate commerce will be forced, in the face of regulation imposed by the City's lawsuit and others like it, to modify their already lawful national conduct to meet the regulatory requirements of the most restrictive local jurisdiction. The Commerce Clause completely preempts such interstate regulation by a state, not to mention a political subdivision of a state.

Defendants' Memorandum at 1–2.[4]

Defendants' deduction that if the Commerce Clause empowers Congress to regulate interstate commerce, then the Commerce Clause itself, even in the absence of Congressional regulation, must also have preemptive effect, is a faulty syllogism

---

**2.** Although defendants also cite the import/export and due process clauses, as they limit their discussion to the Commerce Clause, so too will the court.

**3.** Because the Commerce Clause is not applicable only to firearms, the logical implications of this argument, as Gary points out, are staggering. For example, defendants' theory implies that the Commerce Clause would preeempt a state tort suit seeking to hold a water-heater manufacturer liable for manfac-turing heaters allowing water temperatures above 120 degrees, if other jurisdictions allow higher temperatures.

**4.** This and all references are to the memorandum filed November 8, 1999, by thirteen of the defendants. The court has also given appropriate consideration to the "Supplemental Brief in Opposition to Plaintiff' Motion to Remand" filed by defendant Taurus International Manufacturing on November 9, 1999.

that ignores 170 years of Supreme Court precedent to the contrary:

> Ever since Willson v. Black Bird Creek Marsh Co.[, 27 U.S. 245,] 2 Pet. 245, 7 L.Ed. 412 [1829], and *Cooley v. [Board of Wardens of] Port Wardens*, [53 U.S. 299,] 12 How. 299, 13 L.Ed. 996 [1851], it has been recognized that there are matters of local concern, the regulation of which unavoidably involves some regulation of interstate commerce but which, because of their local character and their number and diversity, may never be fully dealt with by Congress. Notwithstanding the Commerce Clause, such regulation in the absence of Congressional action has for the most part been left to the states, subject to the other applicable constitutional restraints.

*South Carolina State Highway Dep't v. Barnwell Bros.*, 303 U.S. 177, 185, 58 S.Ct. 510, 514, 82 L.Ed. 734, 739 (1938). Similarly, in *Maurer v. Hamilton*, 309 U.S. 598, 603, 60 S.Ct. 726, 729, 84 L.Ed. 969, 974 (1940), the argument was made that a state statute prohibiting car-over-cab transport trucks infringed the Commerce Clause itself. The Court responded:

> Only a word need be said of the constitutional objections. The present record lays a firm foundation for the exercise of state regulatory power, unless the state has been deprived of that power by congressional action ... [W]e can find no basis for saying that the Pennsylvania statute ... infringes the Commerce Clause if Congress has not authorized the Interstate Commerce Commission to promulgate a conflicting rule.

309 U.S. at 603, 60 S.Ct. at 729, 84 L.Ed. at 974; *cf. Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230–31, 67 S.Ct. 1146, 1152–53, 91 L.Ed. 1447, 1459 (1947) ("It is often a perplexing question whether Congress has precluded state action or by the choice of selective regulatory measures has left the police power of the states undisturbed except as the state and federal regulations collide").

In addition, contrary to defendants' argument that the Commerce Clause will not allow the situation where inconsistent state regulations force a party engaging in interstate commerce to conform its conduct to the standards imposed by the most restrictive jurisdiction, the Supreme Court has never found that consequence to violate the Commerce Clause *ipso facto*. For example, in *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959), the Court was faced with an Illinois statute that required curved mudflaps on trucks, while other states required straight mudflaps; *i.e.*, no mudflap design could simultaneously meet both requirements. Had the Court been faced with the situation defendants in the present case posit as untenable—that is, an Illinois statute more restrictive than the other states' but which could be obeyed without violating other states' laws—the Court presumed no problem would exist: "If we had here only a question whether the cost of adjusting to these new local safety regulations prescribed by Illinois unduly burden interstate commerce, we would have to sustain the law." 359 U.S. at 526, 3 L.Ed.2d at 1008. In other words, the Court assumed that the Commerce Clause, standing alone, was not a bar to a state law which would force common carriers to make not-unduly-burdensome modifications to "already lawful national conduct." *Cf. Southern Pac. Co. v. State ex rel. Sullivan*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945).

A great deal of interstate commerce water has flowed over the constitutional dam since the above decisions, and this court has not cited them as a means of expressing any opinion as to whether it is a valid defense that Gary's lawsuit imposes too great a burden on interstate commerce. The decisions are cited only to demonstrate the proposition that the Commerce Clause itself does not wholly preempt state regulation of interstate commerce to any extent—or at the very least to such an extent that Gary's action can be removed to federal court. The defendants' arguments that Gary's action violates the Commerce Clause and other constitutional pro-

visions is a defense, not a basis for removal as an exception to the well-pleaded complaint rule: "even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction." *Metropolitan Life Ins. Co.*, 481 at 68, 107 S.Ct. at 1548.

■ Defendants' secondary argument is that Congress has exercised the power assigned to it by the Commerce Clause, by enacting a "comprehensive federal regulatory scheme that goes directly to the question of what law applies to the interstate distribution of handguns." Defendants' Memorandum at 4. Defendants contend that the Gun Control Act of 1968, 18 U.S.C. § 922 *et seq.*, demonstrates Congress' intent to wholly occupy the field of regulating interstate and foreign commerce involving firearms. Although each of the parallel district court decisions cited above gives sound reasons to doubt the correctitude of this position, *see e.g., Camden*, 81 F.Supp.2d at 548–50, even were this court to indulge defendants' contention, that still would not prove that Gary's action is removable.

The reason for this failure is explained in *Metropolitan Life Ins. Co.*, where the Court, even though considering ERISA,[5] a statute with "unique pre-emptive force," was "reluctant to find that extraordinary pre-emptive power ... that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co.*, 481 U.S. at 65, 107 S.Ct. at 1547. The Court's holding resulted only because it found that ERISA's civil enforcement provision closely paralleled that in the only other statute where the Court has found such "extraordinary preemptive power," § 301 of the Labor Management Relations Act of 1947,[6] and because ERISA's legislative history "consistently sets out ... [a] clear intention to make [suits for benefits under ERISA] ... federal questions for the purposes of federal court jurisdiction." *Metropolitan Life Ins. Co.*, 481 U.S. at 65–66, 107 S.Ct. at

1547, 1548. As explained in Justice Brennan's concurring opinion:

[O]ur opinion should not be interpreted as adopting a broad rule that *any* defense premised on congressional intent to preempt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has clearly manifested an intent to make causes of action ... removable to federal court."

*Metropolitan Life Ins. Co.*, 481 U.S. at 67–68, 107 S.Ct. at 1548 (Brennan, J., concurring) (alteration in original) (citation omitted).

Defendants in this case have neither pointed to any provision of the Gun Control Act nor to any portion of the legislative ·history thereto showing congressional intent to make any state claim impacting interstate commerce in firearms removable to federal court. To the contrary, the Act expressly sets out Congress' contrary intent:

No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field ... unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled.

18 U.S.C. § 927. In light of this explicit directive, and in the absence of any clear indication of Congressional intent to make any state claim impacting interstate commerce in firearms removable, any preemptive effect the Gun Control Act may have serves only as a defense, not a basis for removal. *See Metropolitan Life Ins. Co.*, 481 U.S. at 63–67, 107 S.Ct. at 1546–48.

Finally, defendants argue that in addition to the "complete pre-emption corollary" to the well-pleaded complaint rule recognized in *Metropolitan Life Ins. Co.*, this court should follow the decision in *Wheeling–Pittsburgh Steel Corp. v. Mitsui & Co.*, 26 F.Supp.2d 1022 (S.D.Ohio 1998),

---

5. The Employee Retirement Security Income Act of 1974, 29 U.S.C. § 1001 *et. seq.*

6. 29 U.S.C. § 185.

and, in what this court might call a "synergistic corollary" to the well-pleaded complaint rule, find that removal jurisdiction exists when the Commerce Clause is coupled with a comprehensive federal regulatory scheme. Whether or not *Mitsui* stands for that proposition,[7] it contains no finding, comparable to that in *Metropolitan Life Ins. Co.*, that Congress intended not only to preempt all state causes of action but also to make them removable to federal court.

Because this court reads *Metropolitan Life Ins. Co.* to require that conclusion, and as *Mitsui* is a persuasive authority only, *see In re Smith*, 964 F.2d 636, 638 (7th Cir.1992), *Mitsui* will be read as narrowly as possible. Read in that fashion, the court believes *Mitsui* is a "plain vanilla" artful pleading case; that is, the plaintiff therein had disguised claims under the federal Antidumping Act, 15 U.S.C. § 72, as state law claims, making the action properly removable. "Although the claims made by the plaintiff are couched in terms of state law, the claims of the plaintiff set forth the essential harm for which Congress has enacted a specific remedy, *i.e.*, the Antidumping Act." *Mitsui*, 26 F.Supp.2d at 1024.

In the present case, defendants have not shown a specific federal remedy under the Gun Control Act, or any federal law, that would satisfy Gary's claims.[8] In the absence of any such federal remedy, and because § 927 of the Gun Control Act specifically allows non-conflicting state regulation, *Mitsui* does not persuade this court that Gary's state-law claims should be viewed as necessarily federal in character and so properly removable.

For the foregoing reasons, Gary's motion for remand is GRANTED. Because this court has no subject-matter jurisdiction over this action, the pending motion to dismiss filed by defendant Blythe's Sport Shop, Inc., is left for decision in the court of remand. The clerk is directed to return the state court's file to the state court, accompanied by a certified copy of this order and a copy of the record of proceedings in this court.

**SO ORDERED.**

---

7. Other district courts have distinguished *Mitsui* on the basis that it is an ordinary statutory preemption case. *See, e.g., Archer*, 72 F.Supp.2d at 788; *Penelas*, 71 F.Supp.2d at 1254. *Mitsui* does, however, as defendants point out, contain broad statements such as "the United States Constitution itself prohibits any state regulation of international trade." 26 F.Supp.2d at 1028.

8. Defendants do argue briefly in footnote 4 of their memorandum that the public nuisance portion of Gary's suit can be recharacterized as a federal criminal prosecution. The court finds this argument unpersuasive. The remedies Gary seeks are not the equivalent of a criminal sanction.